UNITED STATES of America, Appellee,

v.

Jimmie L. WILSON, Appellant.

No. 85–1546.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1985.

Decided Nov. 25, 1986.

* The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

Darrell Brown, Little Rock, Ark., for appellant.

Sandra Cherry, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and GUNN,* District Judge.

GUNN, District Judge.

Defendant-appellant Jimmie L. Wilson appeals from a final judgment entered in district court[1] upon a jury verdict finding him guilty of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, of forty counts of knowingly disposing of property mortgaged to a government agency, in violation of 18 U.S.C. § 658, and of seven counts of unlawfully converting to his own use money of the United States, in violation of 18 U.S.C. § 641.

Defendant was sentenced to imprisonment for thirty months on the § 371 count, and for lesser concurrent terms on the § 658 and § 641 counts, with probation to follow. Execution of sentence was stayed pending appeal.

For reversal defendant argues that: (1) the government did not have standing to prosecute the charges against him under § 658, because the Farmers Home Administration (FmHA) had entered into a subordination agreement with the First National Bank with respect to defendant's mortgaged crops; (2) the district court erred in the following aspects: in denying his motion to quash the jury panel; in denying his motion for dismissal or mistrial based on adverse pretrial publicity; in denying his motion to suppress evidence obtained pursuant to a subpoena to search bank records; in failing to instruct the jury that Grand Jury testimony introduced by the government at trial was to be considered for impeachment purposes only; and (3) the government impermissibly singled defendant out for prosecution on the basis of race.

1. The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.

Defendant's brief raises twenty-one additional arguments for reversal.[2]

For the reasons discussed below, we affirm.

Defendant practices law and operates a farm in Helena, Arkansas. Between February 1980 and April 1982 he borrowed approximately $775,230.00 from the FmHA for farm operating expenses with the loans primarily secured by an FmHA lien on his crops. To insure compliance with the security agreement entered into at the time of the loans, the FmHA circulated defendant's name on a list of FmHA borrowers to the grain dryers in the region of his farm. The grain dryers would then properly issue checks to defendant and the FmHA as co-payees as payment for crops transported from the farm.

Between 1981 and December 1982, defendant made multiple sales of grain in the names of Willie Weaver and Reggie Wilson. Willie Weaver, defendant's cousin and co-defendant below, worked as a farm manager for defendant. Reggie Wilson is defendant's son and is a student, not engaged in farming. The government presented evidence that the proceeds from the sales made by Weaver and the junior Wilson, which were issued clear of the FmHA lien, went variously into defendant's law firm account, to cash, into his

farm expense account, or toward payment on a bill for farm supplies.

In May 1981, the FmHA required that a supervised joint bank account be established in the names of the FmHA and defendant and his wife, Henrietta. FmHA loan proceeds were to be deposited into the joint account, and defendant was required to advise the FmHA of his intended use of funds prior to the time of any withdrawal. On various occasions, defendant would apply to the FmHA to have funds transferred from the joint account to his farm operating account from which he would retransfer the money to his law firm account. A substantial portion of funds was used for the purchase and maintenance of a Mercedes Benz.

## I. STANDING OF GOVERNMENT TO PROSECUTE

Defendant argues that the government lost its "standing" to prosecute him on the conversion counts when it entered into subordination agreements with First National Bank of Helena covering the mortgaged crops. Pursuant to these agreements First National had a priority interest in the crop proceeds. Defendant contends that as First National possessed a priority lien on $62,000 converted by him, FmHA could not make out an injury redressable by favorable court action and

**2.** Defendant's brief raises the following additional points: 1) the trial court erred in denying his motion for severance before trial; 2) the prosecutor made improper closing remarks; 3) the trial court erred in denying his motion to dismiss the counts under 18 U.S.C. § 641; 4) the trial court failed properly to instruct the jury on multiple offenses under 18 U.S.C. § 641; 5) the trial court erred in ruling as a matter of law that the FmHA had not assigned its rights to defendant's crops; 6) 18 U.S.C. § 658 is unconstitutional; 7) the prosecution impermissibly commented on defendant's failure to testify; 8) the trial court erred in denying his motion to dismiss for bias in favor of the government; 9) the trial court erred in refusing to instruct the jury on defendant's intent to defraud parties other than the government; 10) the trial court erred in denying his motion to dismiss multiple counts of the indictment which defendant alleges arose out of single transactions; 11) the trial court erred in denying his motion to dismiss for insufficient evidence to support the indictment;

12) the trial court erred in its construction of the lien agreement as a matter of law and in denying defendant the opportunity to make a record on his interpretation; 13) the trial court erred in granting co-defendant's motion for severance in the course of trial; 14) the trial court erred in suggesting defendant take the stand; 15) the trial court's construction of the subordination agreement was in error; 16) the trial court erred in denying defendant the opportunity to present testimony on his interpretation of the agreement; 17) the trial court erred in permitting the testimony of an unqualified government witness; 18) the trial court erred in rejecting defendant's proposed instruction of implied consent of the government to defendant's grain sales; 19) the prosecutor's reference to evidentiary materials during her opening statement prejudiced defendant; 20) the trial court displayed a bias in favor of the government; 21) the government's conduct throughout the course of the prosecution violated defendant's due process rights.

therefore is without standing to prosecute. This contention is casuistic.

A subordination agreement is neither an assignment of rights nor a release from liability. Such an agreement operates solely to set the priority of liens on the subject collateral. This is clear from the language of the agreements. Furthermore, 7 C.F.R. § 1962.20, which governs the subordination of liens by the FmHA, *see United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 725, 99 S.Ct. 1448, 1456, 59 L.Ed.2d 711 (1979) (priority of liens stemming from federal lending programs determined with reference to federal law), clearly contemplates that the FmHA would enter into subordination agreements with respect to mortgaged crops without thereby releasing its financial interest.

7 C.F.R. § 1962.17 governs the release of the government's security interest, *United States v. Farmers Cooperative Co.,* 708 F.2d 352, 353 n. 2 (8th Cir.1983), and there is no evidence to suggest any such release in this instance. *See United States v. Gallatin Livestock Auction, Inc.,* 448 F.Supp. 616, 622 (W.D.Mo.1978), *aff'd,* 589 F.2d 353 (8th Cir.1978) (debtor failed to show that government had released lien on secured property). The FmHA continued to possess its interest in defendant's crops under the security agreements, which was impaired by defendant's unlawful conversion of proceeds from their sale. *Cf. United States v. Missouri Farmers Ass'n, Inc.,* 764 F.2d 488 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1985) (sale of crops covered by an FmHA security agreement does not serve to terminate security and thereby renders purchaser of crops liable for conversion. "FmHA regulations clearly contemplate authorized sales of collateral without release of FmHA's lien." *Id.* at 489.).

It is therefore obvious that the government maintains "standing" to prosecute the conversion action against defendant.

Injury or loss to the government is not, in any event, an element of the conversion offense, 18 U.S.C. § 658. *Cf. United States v. Rice,* 645 F.2d 691 (9th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981) (in action for defrauding deferral credit institution under 18 U.S.C. § 1006, actual financial loss to institution is not an element and need not be proven). Defendant's continuing argument throughout his brief that his prosecution for conversion constituted an impermissible use of the criminal laws to coerce recovery on a debt cannot serve to impose civil procedural requirements on proceedings under the federal penal laws.

## II.  MOTION TO QUASH JURY PANEL

The venire panel from which the jury was selected for defendant's trial included, after strikes made for cause, seven black members. The government used its six peremptory challenges to strike six of the seven black venirepeople, leaving defendant Wilson, who is black, with a jury from which members of his race had effectively been excluded. He argues that this systematic exclusion violated his due process rights and his sixth amendment right to trial by impartial jury.[3]

At the time of trial in March 1985, the prevailing law on government use of the peremptory challenge was embodied in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which holds that the striking of members of a defendant's race from a jury does not rise to the level of a violation of the equal protection clause absent a showing that prosecutors systematically used the peremptory challenge to exclude members of that racial minority over an extended period of time. This circuit followed *Swain* with reservation in *United States v. Childress,* 715 F.2d 1313 (8th Cir.1983), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984), and rejected an attack on presumptively dis-

---

**3.** Defendant also argues that the venire panel itself was improperly drawn from voter registration lists. The use of voter registration lists in jury calls has been upheld consistently in this circuit. *United States v. Clifford,* 640 F.2d 150, 156 (8th Cir.1981); *United States v. Freeman,* 514 F.2d 171, 173 (8th Cir.1975); *United States v. King,* 492 F.2d 895, 896 (8th Cir.1974).

criminatory peremptories as violative of the sixth amendment in 1984. *United States v. Thompson,* 730 F.2d 82 (8th Cir.), *cert. denied,* 469 U.S. 2024, 105 S.Ct. 443, 83 L.Ed.2d 369 (1984). The district court, in ruling on defendant's motion to quash at trial, applied the correct prevailing standard of law. It did not err in denying the motion.

The intervening Supreme Court decision in *Batson v. Kentucky,* — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), holding that the striking of members of defendant's race from a jury panel may make out a presumptive case of discrimination, does not present a basis for reversal in this case or require that it be remanded for hearing. This circuit has ruled that the decision in *Batson* is not retroactive to cases pending on direct appeal. *United States v. Wilson,* 805 F.2d 785 (8th Cir.1986); *see also Batson,* 106 S.Ct. at 1726 (White, J., concurring), 1731 (O'Connor, J., concurring) and 1741 (Burger, J., dissenting) (all suggesting that the ruling be without retroactive application).

## III. PRE–TRIAL PUBLICITY

■ Approximately twelve days before the start of defendant's trial, a brief court summary appeared in the *Arkansas Democrat,* a newspaper with statewide circulation. The summary included a paragraph that falsely identified defendant in a parallel FmHA conversion case which had ended in a conviction. Defendant argues that this damaging pre-trial publicity tainted his trial.

The trial court in the course of voir dire questioned prospective jurors whether they had read about the case in the press. Defendant had an opportunity to question the jurors more extensively and did not do so. Neither did defendant move for a change of venue. We hold that the trial court's questioning of the jurors adequately protected defendant against the adverse effects of the article. The right to a fair and impartial jury does not require "that jurors be totally ignorant of the facts and circumstances involved." *Matthews v. Lockhart,* 726 F.2d 394, 397 (8th Cir.1984), *citing United States v. Bruton,* 647 F.2d 818, 826 (8th Cir.1981). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). None of the prospective jurors indicated that he or she had seen the article. Thus, defendant's assertion of prejudice is without merit.

## IV. MOTION TO SUPPRESS SUBPOENA EVIDENCE

■ Defendant asserts that the district court erred in refusing to suppress bank records obtained pursuant to a subpoena duces tecum issued to the First National Bank of Helena, arguing that the subpoena was used improperly as a substitute for a search warrant and in violation of fourth amendment rights. He also argues that the subpoena was unreasonable and overbroad.

The merits of this argument need not be reached, as defendant does not have standing to challenge the subpoena on fourth amendment grounds. The subpoenaed materials were bank records rather than defendant's private papers. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). Any challenge to their production would have to be raised by the bank. We note in any case that there is no "legitimate expectation of privacy" in negotiable instruments. *Id.*

## V. GRAND JURY TESTIMONY

During direct examination by the government of three of its witnesses, the prosecutor introduced, for purposes of impeachment, prior inconsistent statements made by the witnesses before the Grand Jury. Defendant argues that the court erred in failing to give a limiting instruction to the effect that these prior sworn statements did not constitute substantive evidence.

■ Fed.R.Evid. 801(d)(1)(A) provides that prior inconsistent statements by a wit-

ness are not hearsay and are competent as substantive evidence if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the prior inconsistent statement was given under oath at a "trial, hearing, or other proceeding." Grand jury proceedings fall within the ambit of "other proceedings," *United States v. Mosley*, 555 F.2d 191 (8th Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977), *citing legislative history*. The district court did not err in refusing to give a limiting instruction.

## VI. SELECTIVE PROSECUTION

Defendant argues that the government impermissibly singled him out for prosecution on the basis of his race and of his outspoken opposition to FmHA policies.

 The burden on a selective prosecution claim falls heavily on the defendant. *United States v. Eklund*, 733 F.2d 1287, 1290 (8th Cir.1984), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *United States v. Holmes*, 794 F.2d 345 (8th Cir.1986). To establish a prima facie case a defendant must show that the government singled him out for prosecution while others similarly situated were not prosecuted for similar conduct and that the government's action in thus singling him out was based on an impermissible motive such as race, religion or the exercise by defendant of constitutional rights. *See United States v. Catlett*, 584 F.2d 864 (8th Cir.1978); *United States v. Berrios*, 501 F.2d 1207 (2d Cir.1974); *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). If such showing is made, the burden shifts to the government to disprove defendant's case at an evidentiary hearing. Before a hearing is mandated, however, a defendant's claim must be supported by specific factual allegations that take the motion past a frivolous phase and raise a reasonable doubt as to the prosecutor's purpose. *United States v. Larson*, 612

F.2d 1301, 1304–05 (8th Cir.), *cert. denied*, 446 U.S.. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980). In this case defendant has failed to provide a specific factual basis for his claim. It was not error for the district court to deny defendant's motion to dismiss for selective prosecution without a hearing. See *Holmes*, 794 F.2d at 348.

We have reviewed defendant's other points on appeal and find them to be without merit.

Accordingly, the judgment of the district court is affirmed.[4]

---

4. Affirmance of the judgment of the district court is without prejudice to any motion for a new trial based on newly discovered evidence defendant may want to bring before the district court. In accordance with our decision to defer ruling on such a motion to the district court, defendant's motion to supplement the record on appeal to reflect such evidence has been denied.