# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2359
_____

United States of America

*Plaintiff - Appellee*

v.

Terrence Anthony Dean

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2016
Filed: May 16, 2016
[Published]

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

A jury convicted Terrence Anthony Dean of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a), and 924(d). The district court[1]

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

sentenced Dean to 72 months' imprisonment. Dean appeals his conviction and sentence, arguing that the district court erred in admitting prior statements of a witness at trial and in applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony. We affirm.

## I. *Background*

On the evening of December 27, 2013, Dean, a felon, was drinking alcohol at the apartment that he shared with his daughter, Myishia Maxwell. Maxwell and her friend, Tiffany Bass, were present at the apartment, caring for seven minor children. Maxwell was seven months pregnant. Maxwell and Bass both saw Dean, who was drunk, shoot a handgun outside. Maxwell, Bass, and Dean then went to the grocery store together, but Dean returned to the apartment separately. When Dean returned to the apartment, Maxwell was cooking. Dean began playing music loudly in the living room. Maxwell complained about the noise level, and a fight ensued between the two. Dean entered the kitchen and cursed in Maxwell's face. Maxwell threw a handful of shredded cheese at Dean, and Dean responded by grabbing Maxwell's skillet and hitting her with it. Bass witnessed the altercation.

Maxwell, who was bleeding, left the apartment and called 911. She reported that Dean had struck her in the face with a skillet, had been waving a gun around, and had the gun in his pocket. When police arrived, Maxwell was outside of the apartment. Visibly upset and injured, Maxwell told officers that Dean had a gun and that they would find the gun if they searched for it. Police performed a consent search of the home and located a loaded Cobra .32 caliber handgun wrapped in a white towel, hidden under aluminum cans inside a garbage can. Officers also observed taco meat—the skillet's contents—splattered against the kitchen walls.

Maxwell provided a written statement indicating that Dean "[h]ad a gun [and] sh[o]t 2 time[s] [i]n [the] air" and also "[p]icked up a pot [and] hit [Maxwell] [i]n [her] head," resulting in "food [going] all over [Maxwell's] kitchen." She also stated that

Dean "then h[e]ld [the] gun in [the] air," making her "feel like he could have h[ur]t the kids or [Maxwell]." Officers arrested Dean without incident. Maxwell subsequently appeared before the grand jury pursuant to a subpoena, where she testified consistently with her written statement and recorded statements to officers. She further stated that the gun that police seized was the same gun that Dean had been waving around and shooting earlier that night.

Dean was detained at the Polk County Jail pending trial. While there, he called his sister and instructed her to influence the testimony of Maxwell and Bass. In some of the calls, Dean told his sister to make sure that Maxwell convinced Bass not to testify at all. In others, Dean coached his sister about what she and Maxwell should say if they were to testify.

Trial began on April 6, 2015.[2] When the jury was unable to reach a verdict, the court declared a mistrial. A second trial began on April 20, 2015. During the second trial, Dean called Maxwell as a defense witness after the government rested. On direct examination, she stated multiple times that she never saw Dean with a gun on the night in question. On cross-examination, the government established that Maxwell's statements at trial were inconsistent with her prior statements in the 911 call, her prior recorded oral statements to officers, her prior written statement to police, and her prior grand jury testimony. The government used these prior statements to impeach Maxwell. On redirect, Maxwell was again asked whether she "saw [her] father with a gun that night," and she shook her head. When Dean's counsel instructed her to answer yes or no, Maxwell replied, "I don't remember." Dean's counsel then attempted to introduce as prior consistent statements Maxwell's statements from the *first* trial in which she testified that she did not see her father with a gun. The government objected, arguing that "[t]he timing of the statement makes it problematic, . . . as it was not made before there was improper influence or motive to fabricate." After a

_____

[2]Dean went to trial after the district court rejected a plea agreement.

sidebar conference, the court denied Dean's request, concluding that the statements did not pre-date Maxwell's motive to fabricate as required by Federal Rule of Evidence 801(d)(1)(B)(i).

The court later clarified that the 911 call, the grand jury transcript, and Maxwell's statements at the scene, as recorded by an officer's body microphone, were admissible as substantive evidence pursuant to Rule 801(d)(1)(A). Maxwell's written statement was not formally admitted during the trial but was instead used solely for impeachment purposes. Over the government's objection, the court instructed the jury regarding Maxwell's prior testimony at the first trial and

> t[ook] judicial notice of the fact that on April 6th of 2015, after taking an oath and testifying under penalty of perjury in another proceeding, Myishia Maxwell testified that she did not see a gun on December 27th of 2013 and did not ever see her father in possession of a gun on that day. You may consider this evidence along with everything else in the case.

The jury returned a guilty verdict.

Prior to sentencing, the probation office prepared a presentence investigation report (PSR). The PSR recommended application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for the use or possession of a firearm in connection with another felony offense. Dean objected to application of the enhancement, denying the presence of a firearm and denying that an assault occurred. The parties agreed that Dean did not directly threaten Maxwell with the firearm and was not brandishing the gun at the moment that he hit Maxwell with the skillet.

At sentencing, the district court found by a preponderance of the evidence that Dean committed an aggravated misdemeanor assault, which is a felony under federal law, when he struck Maxwell with the skillet. The district court relied on "the grand

-4-

jury testimony which came in substantively of Myishia Maxwell; the written statement to the police that she made on December 27th of 2013 which came in and was used for impeachment purposes . . . ; as well as the 911 call which came in at both trials." The district court found that this trial evidence established that

> Mr. Dean grabbed a hot, heavy, cast iron skillet full of hot taco meat off the stove, used it to hit his very pregnant daughter in the head, caused her a head injury, then ripped the telephone out of the wall so she couldn't call for law enforcement. And while that's going on, he's got a gun in his pocket, and she knows it, and she reports it within, you know, seconds or minutes of the assault happening and while she's still bleeding. She flees the house. She's clearly worried about the gun and reports it immediately to the police.

The district court concluded that the gun was "present and known" during "an aggravated misdemeanor level assault" and therefore "either facilitat[ed] or could have facilitated that assault." Specifically, the court noted "that Ms. Maxwell kn[ew] of [the gun], kn[ew] her father ha[d] it on him, and kn[ew] the violent nature of her dad, who[] tr[ied] to prevent her from calling for help and who ha[d] just hit her in the head with a cast iron skillet." The court found that Dean had brandished and discharged the same gun earlier in the night, "mak[ing] those facts even more complicated." Finally, the district court noted that Maxwell's written statement indicated that Dean "was waving a gun in the air at the time of the assault in the kitchen." Based on this evidence, the district court found that a four-level enhancement pursuant to U.S.S.G. § 2K1.2(b)(6)(B) was applicable. After calculating the applicable Guidelines range and discussing the factors in 18 U.S.C. § 3553(a), the district court sentenced Dean to 72 months' imprisonment.

## II. *Discussion*

Dean argues that the district court erred in admitting Maxwell's prior statements and in applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony.

### A. *Prior Statements*

The district court admitted Maxwell's grand jury testimony, 911 call, and statements at the scene, as recorded by an officer's body microphone, as substantive evidence. "We review a district court's ruling on the admissibility of evidence for abuse of discretion." *United States v. Thetford*, 806 F.3d 442, 446 (8th Cir. 2015) (citation omitted).

### 1. *Grand Jury Testimony*

At trial, Maxwell repeatedly testified on direct examination that she never saw Dean with a gun the night that he assaulted her. Those statements squarely contradicted her prior grand jury testimony that (1) she saw her father with the firearm, (2) he discharged that firearm, (3) she heard the firearm go off, and (4) the gun that the police recovered from the apartment was the same gun that her father was firing.

"[P]rior inconsistent statements by a witness are not hearsay and are competent as substantive evidence if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the prior inconsistent statement was given under oath at a 'trial, hearing, or other proceeding.'" *United States v. Wilson*, 806 F.2d 171, 175–76 (8th Cir. 1986) (quoting Fed. R. Evid. 801(d)(1)(A)). "The district court has considerable discretion in determining whether prior statements are inconsistent with trial testimony." *United States v. Matlock*, 109 F.3d 1313, 1319 (8th Cir. 1997) (citing *United States v. Russell*, 712 F.2d 1256, 1258 (8th Cir. 1983) (per curiam); *United States v. Thompson*, 708 F.2d 1294, 1302 (8th Cir. 1983) ("The

district court should have considerable discretion to determine whether evasive answers are inconsistent with statements previously given." (citation omitted))).

"In *Wilson*, we held a prior inconsistent statement given by a witness under oath during a grand jury proceeding could be used as substantive evidence." *United States v. Cervantes*, 646 F.3d 1054, 1060 (8th Cir. 2011) (citing *Wilson*, 806 F.2d at 175–76). *Wilson* controls. At trial, Maxwell confirmed that she testified before the grand jury "under oath subject to penalty of perjury."

Despite *Wilson*, Dean argues that her testimony on *redirect* examination that she *could not remember* whether Dean had a gun on the night of the assault is not inconsistent with her grand jury testimony. This argument fails. The district court had already properly admitted the grand jury testimony on cross-examination because it directly contradicted Maxwell's testimony on direct examination. Moreover, Maxwell's testimony on redirect examination that she did not remember whether Dean had a gun on the night of the assault *is inconsistent with* her prior grand jury testimony that he did have a gun. "In applying Rule 801(d)(1)(A), 'inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, *inability to recall*, silence, or changes of position.'" *Matlock*, 109 F.3d at 1319 (emphasis added) (quoting *Russell*, 712 F.2d at 1258 ("Polin's statement on the stand that he could not recall having any contact with Russell around the time he cashed the forged postal money orders is sufficiently inconsistent with his grand jury testimony for the trial court to admit the previous testimony.")).

Accordingly, we hold that the district court did not err in admitting Maxwell's prior grand jury testimony as a prior inconsistent statement pursuant to Rule 801(d)(1)(A).

## 2. *911 Call and Recorded Body-Microphone Statements*

The district court initially ruled that the 911 call was admissible as a present sense impression and excited utterance but that the recorded body-microphone statements could be used only for impeachment purposes; however, the court ultimately ruled that both categories of evidence could be admitted as substantive evidence under the present-sense-impression and excited-utterance exceptions to the hearsay rule.

Federal Rule of Evidence 803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is "not excluded by the rule against hearsay." "The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication. There is no *per se* rule indicating what time interval is too long under Rule 803(1) . . . ." *United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir. 1995) (alteration in original) (quotations and citations omitted), *vacated on other grounds*, 516 U.S. 1168 (1996).

In *Hawkins*, the defendant argued that the district court abused its discretion in admitting the victim's "911 call because the contents of the tape are inadmissible hearsay" and contended that the victim had time to fabricate her story. *Id*. at 730. We held that the victim's "statements from the 911 tape were admissible as a 'present sense impression' under Rule 803(1)." *Id*. We explained that the victim's "911 call was placed with sufficient contemporaneity to the underlying events to be admissible under Rule 803(1)." *Id*. Specifically, we noted that the occupants of the apartment adjacent to the victim's apartment placed a 911 call prior to the victim's call, complaining about a disturbance in the victim's apartment. *Id*. The victim then placed her 911 call seven minutes later from a nearby store, stating that "'my husband *just* pulled a gun out on me.'" *Id*. (citation omitted). We pointed out that "[o]ther courts have held in similar circumstances that statements on 911 tapes are admissible as a

present sense impression." *Id.* (citing *United States v. Mejia–Valez*, 855 F. Supp. 607 (E.D.N.Y. 1994) (holding that tapes of two 911 calls, the first 2 to 3 minutes after the shooting and the other approximately 16 minutes after shooting, were sufficiently contemporaneous with the event and therefore admissible as present sense impressions); *United States v. Campbell*, 782 F. Supp. 1258, 1260–61 (N.D. Ill. 1991) (holding statements on 911 tape admissible as present sense impression where call was made almost immediately after the defendant left the store after a shooting incident); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) (holding that, under certain circumstances, statements on a 911 tape may be admissible as a present sense impression)). Additionally, we determined that the victim's statements were reliable based on the victim's ability to describe details during her call; specifically, "she was able to describe the gun in some detail" and "stated that there was someone else in the apartment with her husband." *Id.*

Similar to the victim in *Hawkins*, Maxwell described the assault in detail during the 911 call, reporting that Dean had struck her in the face with a skillet, had been waiving a gun around, and currently had the gun in his pocket. Also, Maxwell's "911 call was placed with sufficient contemporaneity to the underlying events," *see id.*, as she made the call while she was still bleeding from the assault. Likewise, Maxwell made her subsequent statements in the officer's body microphone immediately after hanging up from the 911 call during a time when she was visibly upset and injured. In the statements captured by the body microphone, Maxwell, consistent with the 911 call, reported that Dean had a gun and that the officers would find the gun if they searched for it.

Because Maxwell's 911 call and recorded statements occurred with sufficient contemporaneity to the assault and evidence reliability, we hold that the district court

did not err in admitting them under the present-sense-impression exception to the hearsay rule pursuant to Rule 803(1).[3]

### B. *U.S.S.G. § 2K2.1(b)(6)(B)*

Dean argues that the district court procedurally erred in finding that a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B)[4] applied for Dean's purported use or possession of a firearm in connection with another felony offense. Dean contends that the evidence was insufficient to establish that another felony occurred. Alternatively, he argues that even if another felony occurred, insufficient evidence exists that the firearm facilitated or had the potential to facilitate the felony.

We need not resolve whether the district court clearly erred in applying the four-level enhancement pursuant to § 2K2.1(b)(6)(B). *See United States v. Holm*, 745 F.3d 938, 940 (8th Cir. 2014) (reviewing for clear error whether the evidence

---

[3]Because we hold that the district court did not err in admitting the evidence under Rule 803(1), we need not address whether the evidence was likewise admissible under the excited-utterance exception pursuant to Rule 803(2).

[4]Section 2K2.1(b)(6)(B) provides:

(6) If the defendant—

\*\*\*

> (B) Used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense,
>
> increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

supported the district court's finding that a firearm was possessed "in connection with" a felony). On this record, any error in applying the enhancement was harmless.

"We have held that it is permissible for sentencing courts to offer alternative explanations for their sentencing decisions and that, in some circumstances, such explanations may serve to prove other identified sentencing errors harmless." *United States v. Sayles*, 674 F.3d 1069, 1072 (8th Cir. 2012) (citing *United States v. Straw*, 616 F.3d 737, 742–43 (8th Cir. 2010) ("Where the record clearly . . . show[s] not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range, any error in applying an enhancement for number of victims is harmless." (alterations in original) (quotations and citations omitted))). Relevant to the present case, "we have found harmless sentencing error when a court specifically identifies the contested issue and potentially erroneous ruling, sets forth an alternative holding supported by the law and the record in the case, and adequately explains its alternative holding." *Id*. (citing, *inter alia*, *Straw*, 616 F.3d at 742 ("Incorrect application of the Guidelines is harmless error where the district court specifies the resolution of a particular issue did not affect the ultimate determination of a sentence." (citation omitted)).

That is precisely what the district court did here. In imposing Dean's sentence, the district court explained that it had considered all of the factors under § 3553(a), including the instant offense, Dean's history and characteristics, and its determination of "a fair and reasonable sentence in light of all of the circumstances of the case." The district court cited "a number of troubling aspects" in Dean's case, such as Dean's "violent assault" against Maxwell, who was pregnant, while minor children were present. The court also referenced Dean's ripping the phone out of the wall to prevent Maxwell from calling for help, his waving around of the gun, and his discharging of the gun earlier in the day when he was intoxicated. After discussing these "serious matters," the court then discussed Dean's "obstructive efforts" to influence Maxwell's testimony. Thereafter, the court noted Dean's "long history of alcoholism and at one

point . . . very heavy crack use and . . . dabbl[ing] in other drugs here and there." Finally, the court discussed Dean's extensive criminal history.

"[H]aving considered all of those factors," the district court sentenced Dean to 72 months' imprisonment. After imposing sentence, the court made clear that it would have imposed the same sentence even without the four-level enhancement under § 2K2.1(b)(6)(B), stating:

> I will tell you that had I ruled differently on these adjustments or on the criminal history point category, *I would likely have varied upward, in fact would have varied upward to that same sentence*. When this case originally came to me and I started looking at it, the reason I rejected the 24 months [in the original plea agreement] was because I just didn't see it as appropriate given the facts of the case, and I still don't see 24 months as an appropriate sentence in this case. *I do think six years is the appropriate sentence in this case, no matter whether we reach it through the guidelines or we reach it through the statute*.

(Emphases added.)

In summary, "even assuming [that the court erred in applying the four-level enhancement under § 2K2.1(b)(6)(B)], any such error was harmless. The district court clearly identified the contested . . . issue, sought and discussed facts as necessary to support its broader sentencing decision, and adequately explained its overall sentence applying 18 U.S.C. § 3553(a)." *See Sayles*, 674 F.3d at 1072.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____