**Ronald E. BEMIS; Brenda E. Bemis,**
**Plaintiffs–Appellants,**

**v.**

**Tim EDWARDS; Leo Lotito;**
**Perry Aldrich; City of Bend,**
**Defendants–Appellees.**

No. 93–35192.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1994.

Decided Jan. 25, 1995.

David C. Force, Eugene, OR, for plaintiffs-appellants.

Robert E. Franz, Jr., Springfield, OR, for defendants-appellees.

Before: FLETCHER, D.W. NELSON, and RYMER, Circuit Judges.

**D.W. NELSON, Circuit Judge:**

Appellant Ronald E. Bemis brought a civil rights action under 42 U.S.C. § 1983 against police officers Tim Edwards, Leo Lotito, Perry Aldrich, and the City of Bend, Oregon ("Appellees") in which he claimed that the police had used excessive force against him. In his appeal from a jury verdict for the Appellees, Bemis argues that the trial judge improperly excluded from evidence portions of a tape recording of 911 emergency calls made on the night of his arrest. Specifically, he contends that the recorded statements of a citizen caller and of police officers should have been admitted as (1) nonhearsay, (2) present sense impressions, or (3) excited utterances. He also asserts that the recording of a call by Bemis' companion, James Kates, requesting medical assistance because he, too, had been beaten by the police, was admissible either to show a city policy of "deliberate indifference" to excessive force, or as a prior consistent statement by Kates. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Factual Background

On April 29, 1989, Bemis and Kates argued with each other as they drove home from a tavern. At a park near his home in Bend, Oregon, Bemis pulled a shotgun on Kates, which Kates promptly seized and broke against a tree. Bemis then ran to his own house nearby and, upon discovering that he had forgotten his keys, broke in. As Bemis emerged from his house with another gun, a resident of the house across the street, Gary Estep, called 911 to report what he believed to be a burglary by armed intruders. City of Bend police officers, including Edwards, Lotito, and Aldrich, arrived and apprehended Bemis and Kates.

At trial, the officers claimed that any force used was reasonable and necessary because they had believed Bemis to be an armed burglar, he had pointed his rifle at them, he had refused initially to drop the gun, and he had resisted arrest. They testified that Bemis had sustained injuries during his altercation with Kates, prior to their arrival. By contrast, Bemis claimed that he dropped the rifle when ordered to do so and verbally surrendered without resistance, yet the police beat him severely. Bemis' wife and stepdaughter, who were inside the house, testified that he had declared to the police that he was not resisting. All three, along with Kates, testified that Bemis suffered a broken jaw and other injuries. Kates testified that the police beat him as well, and that he called 911 to request assistance following his beating. The jury found for the defendants.

In an evidentiary hearing, the judge had considered admission of a 911 tape from the night in question. In one part of the tape, the 911 operator stated to Estep, "[a]pparently he must have thrown the shotgun down." Shortly thereafter, Estep reported, "Now there's a cop beating the shit out of the guy now," and then:

> "There's five units—I got a scanner here in my house, so—but it's kind of getting ridiculous guys. I mean, the cop's beating the shit out of the guy right now. The guy's got a gun, though. I guess it's legal."

In another portion of the tape, Kates called 911 and reported that he had been beaten by four police officers, complained that his "ribs are busted," and requested an ambulance. Subsequently, a police officer instructed the 911 dispatcher to ignore Kates's request.

The district court excluded these statements. The judge held that there was a lack of foundation because the tape indicates that Estep was not actually observing the events he described during the 911 call, but was merely reporting what others in the house were seeing and describing to him at the time, and because there is no indication that the subject of the beating was Bemis rather than Kates. The court excluded Kates' statement as irrelevant to Bemis' beating or to his claim that the city had a policy of using excessive force. We address the admissibility of the various statements separately.

## II. The Estep Statement

Bemis argues that the statement by Gary Estep on the 911 tape describing the police beating of Bemis (the "Estep Statement") should have been admitted either because (1) it was not hearsay, or (2) it satisfied the

requirements of hearsay exceptions for a present sense impression, Fed.R.Evid. 803(1), or an excited utterance, Fed.R.Evid. 803(2). We reject these arguments.

## A.

■■■ Bemis first asserts that the Estep Statement was not hearsay because it was not offered for its truth, but solely to reveal that the defendants' testimony was "inconsistent" with the recorded account of the events. We review whether the district court correctly construed the hearsay rule de novo. *United States v. Warren*, 25 F.3d 890, 895 (9th Cir.1994). This argument lacks merit.

The Federal Rules of Evidence provide that a "prior statement by a witness" offered to show inconsistency with testimony at trial is not hearsay. Fed.R.Evid. 801(d)(1). However, this rule only applies to prior inconsistent statements of *testifying witnesses*. *See United States v. Pistante*, 453 F.2d 412, 412 (9th Cir.1971). Whereas an inconsistent statement by a testifying witness can be used to impeach that witness's credibility, an inconsistent account by another source is offered to show an alternative view of the truth.

In the present case, Gary Estep was not a testifying witness. His out-of-court statement presents an independent account of the events and thus does not serve solely to impeach the credibility of the defendants under Rule 801(d)(1). Therefore, it is hearsay.

## B.

Bemis next argues that even if the Estep Statement is hearsay, it should have been admitted under exceptions to the hearsay rule. We review district court rulings on admissibility under exceptions to the hearsay rule for an abuse of discretion. *United States v. Bland*, 961 F.2d 123, 126 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992).

■■■ Hearsay statements on a 911 tape can be admitted into evidence as either a "public record," Fed.R.Evid. 803(8)(B), or a "business record," Fed.R.Evid. 803(6). *See United States v. Sallins*, 993 F.2d 344, 347–48 & n. 4 (3d Cir.1993) (noting that a 911 tape itself is probably a "public record"); *cf. United States v. Smith*, 521 F.2d 957, 964–65 (D.C.Cir.1975) (finding that police radio broadcasts are business records). However, because citizens who call 911 are not under any "duty to report," Fed.R.Evid. 803(8)(B), a recorded statement by a citizen must satisfy a separate hearsay exception. *See* Fed.R.Evid. 805; *United States v. Pazsint*, 703 F.2d 420, 424–25 (9th Cir.1983) (excluding tapes of emergency calls from witnesses reporting defendant's assault of an IRS agent); *Sallins*, 993 F.2d at 347 (excluding 911 statement that person matching defendant's description was holding a gun). Under certain circumstances, such a statement may qualify as either a "present sense impression," Fed.R.Evid. 803(1), or an "excited utterance," Fed.R.Evid. 803(2). *See United States v. Mejia–Valez*, 855 F.Supp. 607, 613–14 (E.D.N.Y.1994) (admitting under either exception a tape of 911 call made by an eyewitness immediately following a shooting); *United States v. Campbell*, 782 F.Supp. 1258, 1260–61 (N.D.Ill.1991) (admitting under either exception a 911 tape of an eyewitness's description of a gunman). Certainly, a statement by a 911 caller who is witnessing the violent arrest of a suspect by the police could qualify under either exception.

The district court, however, properly refused to admit the Estep Statement because of a lack of foundation to show that it satisfied the requirements for admission as a present sense impression or an excited utterance. We review the issue of whether evidence is supported by a proper foundation for an abuse of discretion. *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987).

■■■ We have held that to qualify under either exception, an out-of-court statement must be nearly contemporaneous with the incident described and · made with little chance for reflection.[1] *See United States v.*

---

1. In the case of an excited utterance, the contemporaneity requirement refers to temporal proximity to the "startling event." Although the subject matter of an excited utterance is frequently a

*Ponticelli,* 622 F.2d 985, 991 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), *overruled on other grounds by United States v. DeBright,* 730 F.2d 1255, 1259 (9th Cir.1984) (en banc). Although the Estep Statement satisfies these requirements, it does not meet the further requirement of personal knowledge of the events described. Generally, a witness must have "personal knowledge of the matter" to which she testifies. Fed.R.Evid. 602. In the context of hearsay, the declarant must also have personal knowledge of what she describes.[2] Fed.R.Evid. 803 advisory committee's note ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."); *Miller v. Keating,* 754 F.2d 507, 511 (3d Cir. 1985); *United States v. Stratton,* 779 F.2d 820, 829 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986); *see also In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407, 1420 n. 4 (9th Cir. 1994) (excluding a written statement because the author lacked personal knowledge of the facts contained therein).

■ Specifically, this requirement that a declarant have personal knowledge of the events described applies to the present sense impression exception. Fed.R.Evid. 803(1) (defining "present sense impression" as one made "while the declarant was perceiving the event or condition"); *Campbell,* 782 F.Supp. at 1260; 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(1)[01], at 803–93 (1994). Similarly, the excited utterance exception is only available if the declarant has firsthand knowledge of the subject matter of her statement. *Miller v. Keating,* 754 F.2d 507, 511 (3d Cir.1985) (excluding testimony tending to fault plaintiff in car accident case because of lack of evidence of declarant's personal knowledge); 4 Weinstein

& Berger, *supra,* ¶ 803(2)[01], at 803–104; *see also McLaughlin v. Vinzant,* 522 F.2d 448, 451 (1st Cir.) (emphasizing that the proponent of hearsay evidence had to show that the declarant could have witnessed the shooting), *cert. denied,* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975).

■ As the proponent of the evidence, Bemis had the burden of establishing personal perception by a preponderance of the evidence. *See Miller,* 754 F.2d at 511. Estep's proximity to the scene at the time of the incident provided some circumstantial evidence of firsthand knowledge, which ordinarily may be sufficient to satisfy the foundational requirement in the context of a statement by a phone caller. *See First State Bank of Denton v. Maryland Casualty Co.,* 918 F.2d 38, 41–42 (5th Cir.1990) (admitting declarant's assertion over the phone that a party was not at home when statement was made from phone at the home at the relevant time); *Miller v. Crown Amusements, Inc.,* 821 F.Supp. 703, 705–06 (S.D.Ga.1993) (admitting unidentified 911 caller's description of hit-and-run accident because it was made in close physical and temporal proximity to the accident and the caller indicated that she had seen the accident); *see also* Fed.R.Evid. 803 advisory committee's note (stating that firsthand knowledge "may appear from [the declarant's] statement or be inferable from circumstances").

The district court, however, correctly noted that the record in this case gives an articulable basis to suspect that Estep did not witness the events he described, but instead had relayed to the 911 operator descriptions by other people who had been observing from the windows of Estep's house. Not only did Estep admit at one point that he could not describe what was happening outside, but he also could be

---

[2] A witness who merely testifies to the fact that a declarant made the statement, however, need only have firsthand knowledge that the statement was made, not of the events described in the statement. Fed.R.Evid. 602 advisory committee's note; *United States v. Stratton,* 779 F.2d 820, 829 (2d Cir.1985).

description of the "startling event," the statement need only "relat[e] to" the startling event. Fed.R.Evid. 803(2); *see United States v. Napier,* 518 F.2d 316, 318 (9th Cir.) (admitting statement identifying the defendant as the declarant's assailant when made as a spontaneous reaction to the "startling event" of viewing a picture of the defendant two months after the assault), *cert. denied,* 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975).

heard repeating the words of an unidentified voice in the background. Although Estep was available to testify as to the circumstances surrounding his statements, Bemis declined to offer his testimony. Because there are affirmative indications that the declarant lacked firsthand knowledge of the events he described, we hold that the district court did not abuse its discretion in refusing to admit the Estep Statement. *See Miller,* 754 F.2d at 511 (noting that the declarant's description may have been a repetition of the statements of someone who actually had seen the event). We therefore need not address the district court's finding of lack of foundation as to the relevance of the Estep Statement.

### III. The Officer's Statement

■ Bemis also argues that the district court improperly excluded the statement on the 911 tape by "Officer 1" that Bemis had dropped his gun at a time prior to his confrontation with the police (the "Officer's Statement"). Contrary to Bemis's assertion that "Officer 1" was an officer *at the scene* who had witnessed Bemis throwing his gun down, the record indicates that "Officer 1" was the 911 operator speaking to Estep. Since the 911 operator was not at the scene and therefore must have been relaying information from another source, the Officer's Statement could not be admitted for the same reason that the Estep Statement was excluded: lack of foundation as to firsthand knowledge. *See Miller,* 754 F.2d at 511. Although a showing that the 911 operator's source also had a "duty to report" to the city may have been sufficient to admit the statement under the business records or public records exceptions to the hearsay rule, Fed. R.Evid. 803(6), 803(8), we cannot credit the statement without such a foundation, particularly when law enforcement personnel other than City of Bend police officers were at the scene. *See Pazsint,* 703 F.2d at 424 (requiring that the firsthand source of information have a "duty to report"); *Miller v. Field,* 35 F.3d 1088, 1091 (6th Cir.1994) (refusing to admit a portion of a police report recording statements by the local prosecutor).

Bemis' argument that the Officer's Statement was nonhearsay offered only to show inconsistency also fails. As with the Estep Statement, the declarant was not a testifying witness against whom a prior inconsistent statement would be admissible. *See Pistante,* 453 F.2d at 412. Accordingly, we find that the district court did not abuse its discretion in excluding the Officer's Statement.

### IV. The Kates Statement

Bemis also asserts that the portion of the 911 tape in which James Kates, Bemis' companion at the scene, requested medical assistance because the police had beaten him (the "Kates Statement"), was excluded improperly. Bemis concedes that the district court properly found that the evidence was cumulative of Kates' own testimony and therefore excludible as direct testimony to show that Kates had been beaten. *See United States v. Marabelles,* 724 F.2d 1374, 1382 (9th Cir. 1984) ("The exclusion of relevant, but cumulative, evidence is within the sound exercise of the trial court's discretion."). However, Bemis argues that the Kates Statement should have been admitted (1) as evidence of a city policy of using excessive force during arrests and (2) as a prior consistent statement of Kates. We reject both arguments.

#### A.

■ The Kates Statement was not relevant as evidence to support Bemis's claim that the City of Bend has a policy of using excessive force during arrests. We review rulings on the relevance of evidence for an abuse of discretion. *United States v. Rubio-Topete,* 999 F.2d 1334, 1338 (9th Cir.1993). In order to find the city liable, the plaintiff would have to show that the city's failure to act against such conduct amounted to a policy of "deliberate indifference." *Stevenson v. Koskey,* 877 F.2d 1435, 1440 (9th Cir.1989). Whereas evidence of *prior* incidents of police misconduct may indicate that such a policy exists, it is doubtful that the 911 operator's failure to send an ambulance to help Kates *after* his beating, even if attributable to the city, would be relevant to the claim. *See Davis v. City of Ellensburg,* 869 F.2d 1230, 1235 (9th Cir.1989) (finding no city policy to

use excessive force when plaintiff failed to show evidence of prior acts of excessive force); *Harvey v. Hankins,* 681 F.Supp. 622, 624 (W.D.Mo.1988) (noting that city conduct subsequent to the incident is irrelevant to the issue of municipal liability). Thus, we find that the district court did not abuse its discretion in excluding the Kates Statement from use as evidence of a city policy of using excessive force during arrests.

### B.

Bemis also argues that the Kates Statement was admissible as a prior consistent statement. Under this theory, if the defense attempted to impeach Kates' testimony that he had been beaten, the Kates Statement could have served as a prior consistent statement of the witness in order to rehabilitate. *See United States v. DeCoito,* 764 F.2d 690, 694 (9th Cir.1985); *United States v. Duncan,* 693 F.2d 971, 980 (9th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). For this purpose, the statement would be nonhearsay because it would be "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed.R.Evid. 801(d)(1)(B).

However, because Bemis failed to provide this court with the trial transcript, we cannot determine whether the defense actually impeached Kates. Indeed, the fact that Bemis expressly conceded at a hearing *following Kates' testimony* that the Kates Statement could only be admitted as evidence of a city policy, suggests that this threshold requirement may not have been satisfied. Because we cannot make this necessary determination without the transcript, we reject Bemis's argument. *See Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 877 F.2d 787, 789 (9th Cir.1989) (permitting appellate court to refuse to consider argument when appellant has failed to provide a transcript).

*The panel unanimously finds this case suitable for decision without oral argument. Fed.R.Civ.P.

### V. Attorneys' Fees

 Although a prevailing party in a § 1983 action may be entitled to attorneys' fees, 42 U.S.C. § 1988(b), a prevailing defendant may only receive such fees if the plaintiff's action was "unreasonable, frivolous, meritless, or vexatious." *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1402 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994); *Roberts v. Spalding,* 783 F.2d 867, 874 (9th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986). We find that the claim was not frivolous and deny the request for attorneys' fees.

### Conclusion

Because we find no reversible error, we need not address Bemis' motion for a new trial. The judgment of the district court is AFFIRMED.