110 F.3d 71
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Escobar VELASQUEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Jose BARAJAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Filomeno NARANJO-HEREDIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Martin GARCIA, Defendant-Appellant.
 Nos. 95-50198, 95-50199, 95-50201 and 95-50287.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 9, 1996 as to 95-50198, 95-50199,
95-50201.
Submitted Dec. 9, 1996 as to 95-50287*.
Decided March 26, 1997.
 
 Before: HALL, KOZINSKI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 We affirm the convictions and sentences of Daniel Escobar Velasquez ("Velasquez"), Juan Jose Barajas ("Barajas"), and Filomeno Naranjo-Heredia ("Heredia") for conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, and use of a firearm in relation to a drug trafficking crime. We remand the sentence of Juan Martin Garcia ("Garcia") for conspiracy to distribute methamphetamine for the district court to determine, based solely on information from sources other than his proffer interview, where in the range already arrived at by the district court he should be sentenced.
 
 
 3
 A. Issues Pertaining to Velasquez and Heredia
 
 1. Rivas's Hearsay Statement
 
 4
 Velasquez and Heredia challenge the admission, as a "present sense impression" under Fed.R.Evid. 803(1), of a recorded statement made by the informant Rivas to Agent Flodquist to the effect that Barajas and "Bobby" were going to get six pounds of methamphetamine and would be accompanied by a second car.
 
 
 5
 Rivas's testimony qualifies under Fed.R.Evid. 803(1)--an exception to the hearsay rule--as an out-of-court statement made nearly contemporaneously with the incident described and with little chance for reflection. See, e.g., Bemis v. Edwards, 45 F.3d 1369, 1372 (9th Cir.1995). Rivas also had personal knowledge of the events described, see, e.g., id. at 1373, and an incentive to communicate accurately because his safety was at stake and he knew that his conversations were being monitored and recorded for later review. The transcript offered at trial also supported his testimony that he was told that a second car would be involved in the transaction.
 
 2. The Reasonable Doubt Instruction
 
 6
 Velasquez's and Heredia's challenge to the district court's reasonable doubt instruction to the jury fails because of our holding in United States v. Velasquez, 980 F.2d 1275, 1278-79 (9th Cir.1992), that, considering such an instruction given as a whole, the use of "firmly convinced" language neither lessens the prosecutor's burden nor constitutes reversible error.
 
 3. Sufficiency of Evidence
 
 7
 The evidence was sufficient to support Velasquez's and Heredia's conspiracy convictions. Once a conspiracy exists, evidence establishing beyond a reasonable doubt that a defendant was connected to the conspiracy is sufficient to convict him of knowing participation in the conspiracy. United States v. Foster, 985 F.2d 466, 469 (9th Cir.1993), as amended, 17 F.3d 1256 (9th Cir.1994). While mere proximity to the scene of illicit activity is not sufficient to establish involvement in a conspiracy, a defendant's presence may nevertheless support such an inference when viewed in context with other evidence. United States v. Thomas, 887 F.2d 1341, 1347 (9th Cir.1989).
 
 
 8
 Velasquez's presence at Heredia's apartment, their switching of cars and shadowing of the van, and their carrying of loaded weapons and pagers serviced by Rancho Furniture, all could lead a reasonable trier of fact to conclude that Velasquez and Heredia acted as lookouts and provided security for the drug transaction. We have found less evidence to be sufficient to sustain conspiracy convictions. See, e.g., United States v. Mares, 940 F.2d 455, 457-58 (9th Cir.1991) (defendants engaged in counter-surveillance activities and hence were knowing members of conspiracy, despite not possessing any weapons or communication devices).
 
 
 9
 The evidence here also satisfies several of the factors identified in United States v. Moreno-Flores, 33 F.3d 1164, 1171 (9th Cir.1994), as relevant to the sufficiency of so-called counter-surveillance evidence: (1) activities occurring when the risk of detection and capture is the greatest; (2) particular persons or objects being the focus of defendant's counter-surveillance; and (3) evasion of arrest or capture.
 
 
 10
 4. Amount of Drugs "Reasonably Foreseeable"
 
 
 11
 Velasquez had a prior California narcotics felony conviction (possession of heroin for sale). Under 21 U.S.C. § 841(b)(1)(A), a person who violates § 841(a)(1) (possession with intent to distribute) after having been convicted of a prior narcotics felony faces a mandatory minimum penalty of 20 years (240 months). Therefore, any error in determining the amount of methamphetamine reasonably foreseeable to Velasquez would be harmless as a matter of law. See United States v. Mesa-Farias, 53 F.3d 258, 260 (9th Cir.1995) (sentencing error harmless where defendant was subject to statutory minimum even without error).
 
 
 12
 Heredia's reliance on United States v. Becerra, 992 F.2d 960, 966 (9th Cir.1993), is misplaced. There we held that, under the Sentencing Guidelines, "each conspirator may be sentenced only for the quantity of drugs that he reasonably foresaw would be distributed or that fell within the scope of his own agreement with his co-conspirators." As we noted in Mesa-Farias, 53 F.3d at 260, however, "Becerra limits a conspirator's liability only for drugs possessed by a coconspirator, not for drugs possessed by the conspirator himself." On the contrary, the Guidelines do not require that the quantity of drugs be reasonably foreseeable when sentencing is for "conduct that the defendant personally undertakes." Id. (quoting U.S.S.G. § 1B1.3 cmt., n. 2).
 
 
 13
 Because the district court properly found that Heredia had either actual or constructive possession of the drugs by driving the car in which the methamphetamine was located, his conviction for possession was entirely appropriate and the district court did not err in holding him responsible for the full amount of the methamphetamine in determining his sentence.
 
 5. Downward Departure
 
 14
 We lack jurisdiction over Heredia's claim that the district court erred by not granting a downward departure based on aberrant conduct. See, e.g., United States v. Dickey, 924 F.2d 836, 839 (9th Cir.1991) (district court's discretionary denial of downward departure not reviewable).
 
 B. Issues Pertaining to Barajas and Heredia
 1. Dismissal of the Sleeping Juror
 
 15
 A district court has independent authority to substitute an alternate juror for a sleeping juror. United States v. Barrett, 703 F.2d 1076, 1083 n. 12 (9th Cir.1983). "So long as the substitution takes place prior to deliberations, it 'is within the prerogative of the trial court and does not require the consent of any party.' It is only if the substitution takes place after jury deliberations have begun that express consent of the defendant(s) must appear on the record." United States v. Mullins, 992 F.2d 1472, 1478 (9th Cir.1993) (citations omitted) (quoting 2 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 388 (1982)). After being informed about the sleeping juror by Barajas's own attorney, the district court judge observed the juror sleeping, held a hearing in which the juror was questioned directly, and dismissed him pursuant to Fed.R.Crim.P. 24(c). Accordingly, the district court's dismissal of the sleeping juror over the defendants' objections was not error. See United States v. Alexander, 48 F.3d 1477, 1485 (9th Cir.), cert. denied, 116 S.Ct. 210 (1995).
 
 
 16
 2. The § 924(c) Convictions and Bailey v. United States
 
 
 17
 For a variety of reasons, Barajas and Heredia contend that Bailey v. United States, 116 S.Ct. 501 (1995), requires a reversal of their firearm convictions under 18 U.S.C. § 924(c)(1).
 
 
 18
 a. Bailey and the Rule of Vicarious Liability
 
 
 19
 Barajas's argument that Bailey precludes his vicarious liability for carrying a gun under Pinkerton v. United States, 328 U.S. 640, 647 (1946), is answered by our recent decision in United States v. Lopez, 100 F.3d 98 (9th Cir.1996). Lopez holds in part that "[b]ecause the district court gave the jury a proper Pinkerton instruction and informed the jury that each coconspirator was vicariously liable for all acts taken by the other conspirator in furtherance of the conspiracy, ... the evidence was sufficient to support Lopez' conviction under section 924(c)." Id. at 101 (footnote omitted). Pinkerton is thus applicable to the "carry" prong of § 924(c).
 
 
 20
 b. § 924(c)
 
 
 21
 and Due Process
 
 
 22
 Barajas's argument that the Due Process Clause would be offended if his § 924(c) conviction were allowed to stand--because he was a "mere messenger"--finds no support in either United States v. Castaneda, 9 F.3d 761 (9th Cir.1993), or United States v. Johnson, 886 F.2d 1120 (9th Cir.1989).
 
 
 23
 Unlike the defendant in Castaneda, Barajas was more than a marginal player in a street-level narcotics conspiracy: playing an integral role in negotiating with Rivas and informant Giraldo; meeting with the other defendants prior to and during the transaction; actually conducting the transaction in the SavOn parking lot; and admitting that he provided "security" for the transaction. Hence the evidence established that the firearms carried by Heredia and Velasquez were "reasonably foreseeable" to Barajas.
 
 
 24
 c. The § 924(c)
 
 Convictions and Bailey
 
 25
 While Barajas's and Heredia's convictions cannot be affirmed based upon a "use" theory, their indictments charged them with both using and carrying a firearm, and the facts support a conviction based on the "carry" prong of § 924(c)(1).
 
 
 26
 Bailey does not construe the term "carry," but in United States v. Hernandez, 80 F.3d 1253, 1258 (9th Cir.1996), we construed "carry" in light of Bailey. We said: "[T]he defendant must have transported the firearm on or about his or her person. This means the firearm must have been immediately available for use by the defendant." Id.
 
 
 27
 Here, Heredia had a handgun in his boot--on his person and obviously immediately available for use. Because both Heredia and Velasquez had guns on their persons and because they carried these guns in furtherance of the conspiracy, the evidence also supports Barajas's vicarious liability conviction based on the "carry" prong.
 
 
 28
 d. The Jury Instructions on § 924(c)
 
 
 29
 To the extent that the instructions did not restrict "use" to the active employment of a firearm, the government concedes that the instructions were erroneous, but contends that the convictions should nevertheless be affirmed.
 
 
 30
 In Lopez, 100 F.3d at 102-05, we considered jury instructions similar to those at issue here, and held that no reversal was warranted. We reach the same result here.
 
 
 31
 Even though none of the defendants objected to the instructions, we review their claims for harmless error. See Lopez at 103 (citing United States v. Keys, 95 F.3d 874, 878 (9th Cir.1996)): "[W]hen faced with a 'solid wall of circuit authority' endorsing a jury instruction, no objection to that instruction need be registered in the trial court to preserve the point on appeal should that 'solid wall' suddenly crumble in the interim and render the instruction defective."). The harmless error test to be applied is that found in Justice Scalia's concurring opinion in Carella v. California, 491 U.S. 263, 267-73 (1989), which states that "the omission [or misdescription] is harmless only if review of the facts found by the jury establishes that the jury necessarily found the omitted [or misdescribed] element." Roy v. Gomez, 81 F.3d 863, 867 (9th Cir.) (en banc) (emphasis in original), vacated, 117 S.Ct. 337 (1996). Like the instructions in Lopez, the instructions here misdescribe the "carry" element of § 924(c)(1). "Accordingly, the error is harmless only if review of the facts actually found by the jury establishes that the jury necessarily found the misdescribed element, i.e. only if the jury necessarily found that [defendant] transported the firearm 'on or about' his or her person such that the firearm was 'immediately available for use.' " Lopez, 100 F.3d at 104 (quoting Hernandez, 80 F.3d at 1258)).
 
 
 32
 Here, the jury necessarily found that Heredia was carrying (and thus Barajas was vicariously carrying) a firearm, because the facts support only the "carry" prong of § 924(c). Heredia's gun in his boot was both on his person and immediately available for use. To find that the firearm was in Heredia's possession or under his control at the time that the crime was committed, the jury had to find that he "carried" the firearm as well.
 
 
 33
 e. Barajas's Conviction and the "Carry" or "Use" Theory
 
 
 34
 Barajas's argument that it is impossible to determine whether the jury convicted him under the impermissible "use" theory or the permissible "carry" theory also fails. When a jury is presented with a legally inadequate theory and it is impossible to tell on which basis the jury rested its verdict, the conviction must be vacated and the case retried as to that charge. See United States v. Barona, 56 F.3d 1087, 1098 (9th Cir.1995) (citing Yates v. United States, 354 U.S. 298, 312 (1957) and Griffin v. United States, 502 U.S. 46 (1991)). Here, because the facts support only one scenario--that Heredia (and Velasquez) carried their guns on their persons--it is possible to tell on which basis the jury rested its verdict.
 
 C. Issues Pertaining to Barajas Only
 1. The Audiotape Transcript
 
 35
 The district court did not err in admitting Government Exhibit 19 (an audiotape and its transcript). A recorded conversation is generally admissible unless the unintelligible portions are so substantial that the recording as a whole is untrustworthy. United States v. Lane, 514 F.2d 22, 27 (9th Cir.1975). The determination of the trustworthiness of the tape is left to the discretion of the district court. Id.
 
 
 36
 The district court did not abuse its discretion here. The court held two hearings to determine the admissibility of the transcripts, questioning the government about why the transcripts were necessary and asking the government to review each of the transcripts and to point to particular passages and explain their evidentiary significance. Furthermore, the court stated that the transcripts constituted evidence that the government could use to impeach the likely testimony by Barajas that he didn't know drugs were involved in the transaction.
 
 
 37
 2. The Obstruction of Justice Enhancement (U.S.S.G. § 3C1.1)
 
 
 38
 Barajas's obstruction of justice enhancement was not irrational and did not violate his due process rights. His claim that if the government had brought a separate perjury indictment against him he would have been subject to a possible sentence of only 12-18 months, whereas the obstruction of justice enhancement resulted in an additional sentence of 47 months, is inaccurate. If the government sought a separate indictment against him for obstruction of justice based on perjured trial testimony, U.S.S.G. § 2J1.2 ("the obstruction guideline") would apply. The obstruction guideline states that "[i]f the offense involved ... the ... prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact)." U.S.S.G. § 2J1.2(c)(1). Application of the accessory after the fact guideline would, as the government correctly notes, result in a base offense level of 30 for Barajas, since his base offense level was 36 and the guideline requires a 6-level reduction. U.S.S.G. § 2X3.1(a). Even assuming a criminal history category I, Barajas's guideline range would be 97-121 months. U.S.S.G. Ch. 5, Pt. A. Hence, the additional 47 months that Barajas received after the enhancement for obstruction is more lenient than what he would have received under a separate perjury prosecution.
 
 
 39
 D. Issues Pertaining to Naranjo-Heredia Only
 
 
 40
 In reviewing Heredia's challenge to comments made by government counsel in closing, we must determine "whether allegedly improper behavior, considered in the context of the entire trial, including the conduct of the defense counsel, affected the jury's ability to judge the evidence fairly." United States v. De Cruz, 82 F.3d 856, 862 (9th Cir.1996) (quoting United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986)). In making this determination, we look to the substance of any curative instruction and to the closeness of the case. Id.
 
 
 41
 Here, the district court's immediate curative instruction and its jury instruction that lawyers' arguments do not constitute evidence were a sufficient cure for any prejudice that may have stemmed from these comments. See, e.g., id. at 863 (holding that immediate curative instructions cured any prejudicial effect); United States v. Williams, 989 F.2d 1061, 1072 (9th Cir.1993) (holding that jury instruction that counsel's argument is not evidence remedied any possible prejudice). In addition, the prosecutor's comments, while clearly improper, "did not constitute an integral part of the prosecution's strategy." See De Cruz, 82 F.3d at 863. Finally, this case does not appear to have been close. The government presented persuasive evidence of Heredia's participation in the conspiracy and possession of methamphetamine.
 
 E. Issues Pertaining to Garcia Only
 
 42
 Garcia alleges the following errors in his sentencing: (1) using the quantity of 10 pounds of methamphetamine to determine the base offense level when he was not reasonably capable of producing that quantity; (2) sentencing him based on dextro-methamphetamine, as opposed to levo-methamphetamine, without determining the type of methamphetamine involved; and (3) considering statements he made pursuant to a limited immunity agreement and plea agreement in determining his sentence at a particular point within the guideline sentencing range.
 
 
 43
 A review of the record reveals that Garcia waived his right to appeal his sentence and the manner of its determination. "[A]n express waiver of the right to appeal in a negotiated plea of guilty is valid if knowingly and voluntarily made." United States v. DeSantiago-Martinez, 38 F.3d 394, 395 (9th Cir.1992) (quoting United States v. Bolinger, 940 F.2d 478, 479 (9th Cir.1991)), cert. denied, 115 S.Ct. 939 (1995). Here, the plea agreement that Garcia signed expressly states:
 
 
 44
 You further understand that Title 18, United States Code, Section 3742 gives you the right to appeal the sentence imposed by the Court. Acknowledging all this, you knowingly and voluntarily waive your right to appeal any sentence imposed by the Court and the manner in which the sentence is determined, so long as your sentence is within the statutory maximum specified above.
 
 
 45
 The district court advised Garcia that he was giving up his right to appeal and ensured that he understood the consequences of such a waiver. In light of Garcia's valid waiver of his right to appeal his sentence and the manner of its determination, we do not address Garcia's allegations that the district court improperly assessed the amount of methamphetamine for which he was responsible and that it failed to determine the type of methamphetamine at issue.
 
 
 46
 The information that the government provided to the district court regarding Garcia's criminal history based on his proffer did not violate the plea agreement because the plea agreement contained no provision assuring Garcia that his statements would not or could not be used against him. In fact, the cooperation clause in the plea agreement explicitly states, "The decision whether and how to use any information and/or cooperation that you provide (if at all) is in the exclusive, reasonable discretion of this Office."
 
 
 47
 The government admits, however, that its provision of information based on Garcia's proffer did violate the limited immunity agreement. This agreement states that any statements made by Garcia would not be used against him except as specified, and sentencing was not specified. We therefore remand Garcia's case for the limited purpose of determining, based solely on information from sources other than Garcia's proffer interview, where in the range already arrived at by the district court he should be sentenced.
 
 
 48
 AFFIRMED as to 95-50198, 95-50199, and 95-50201. REMANDED FOR RESENTENCING as to 95-50287.
 
 
 
 *
 As to Defendant-Appellant Juan Martin Garcia, the panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3