**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 12 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   22-30002 |
| Plaintiff-Appellee, | D.C. No. 3:15-cr-05190-BHS-1 |
| v. | |
| EDWARD T GENTRY, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted May 18, 2022
Seattle, Washington

Before:  WARDLAW, GOULD, and BENNETT, Circuit Judges.
Dissent by Judge BENNETT

Edward Gentry appeals the district court's revocation of supervised release

following an evidentiary hearing at which the district court found that Gentry

committed vehicular assault under Washington Revised Code § 46.61.522.  Gentry

argues that the district court erred in relying on hearsay testimony regarding the

speed at which he was traveling and the circumstances of the accident, without

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

providing Gentry an opportunity to confront the declarants or conducting the balancing of interests required by *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999). We have jurisdiction under 28 U.S.C. § 1291 and we reverse.

1. The district court erred by failing to conduct *Comito* balancing. Individuals on supervised release have the right to confront adverse witnesses during revocation hearings. *See United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005). "[A] due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights." *Id*. at 985. Thus, before admitting hearsay evidence, "the court *must* weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Comito*, 177 F.3d at 1170 (emphasis added). Here, the district court conducted no such balancing of interests; instead, it mistakenly believed that Gentry objected based on hearsay and admitted testimony about what the accident witnesses told the police officer under the present sense impression exception to hearsay.

When the district court fails to conduct *Comito* balancing, we must weigh the *Comito* factors ourselves.[1] *See id*. Gentry's interest in confrontation was

---

[1] We reject the Government's contention that Gentry forfeited this argument by failing to argue that hearsay statements that may be admissible under the rules of evidence are still subject to *Comito* balancing before the district court. In his briefing before the district court, Gentry objected to the proposed hearsay testimony on due process confrontation grounds.

strong. The hearsay testimony was critical to the district court's determination that Gentry committed vehicular assault. The district court relied upon an officer's testimony that witnesses told him that Gentry "hit the bicyclist while running through a red light, and was going very fast, one said 85 miles per hour." Additionally, the reliability of the hearsay evidence was questionable. The officer's actual testimony was couched in qualifiers, stating "I think one [witness] might have said 85 miles per hour."[2] And even if the officer's recollection was accurate, Gentry could not inquire about the reliability of the witness's statement: whether it was an estimate or just indicative of a high rate of speed, whether the witness even saw the accident happen, or what the witness's vantage point was. We disagree with our dissenting colleague that "the non-hearsay evidence on the record essentially eliminates the importance of this hearsay testimony to the ultimate finding," **Dissent at 7,** because none of "the non-hearsay evidence" cited

---

[2] We reject the government's argument that the district court did not err because these statements are admissible present sense impressions. Federal Rule of Evidence 803(1) provides that a statement "describing or explaining an event an event or condition, made while or immediately after the declarant perceived it," is a present sense impression. To qualify, the statement must be "nearly contemporaneous with the incident described and made with little chance for reflection." *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995). Here, no record evidence establishes how much time elapsed between the accident and when the officer arrived on the scene, or from when the officer arrived on the scene to when he interviewed the witnesses. The dissent is incorrect that being a part of an ongoing medical emergency necessarily means that statements were sufficiently contemporaneous to qualify as a present sense impression. *See* **Dissent at 8 n.8.**

3

pertains to the relevant period in time: that of the accident itself.

By contrast, the government failed to demonstrate good cause for depriving Gentry of his right to confrontation. The government first argued that a spike of COVID-19 during Gentry's hearing constituted good cause. However, cost-effective and simple alternatives, such as a continuance or virtual testimony, could have been used to preserve Gentry's right to confrontation. The district court found the hearsay nature of the evidence troubling and that the "pandemic was not good cause." The district court even volunteered that the government could seek a continuance as the government "has a problem . . . in presenting evidence." Thus, because Gentry's interests outweigh the government's failure to demonstrate good cause, the district court violated his due process rights by admitting the hearsay testimony.

2. The district court's error in failing to exclude the hearsay statements was not harmless beyond a reasonable doubt. *See Comito*, 177 F.3d at 1170; *see also United States v. Job*, 871 F.3d 852, 865 (9th Cir. 2017) (same).[3] In finding that Gentry committed vehicular assault, the district court cited the hearsay

---

[3] The dissent argues that we apply the incorrect standard of review and should instead apply the "preponderance of the evidence" standard, citing *United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008) and *United States v. Daniel*, 209 F.3d 1091, 1094 (9th Cir.), *amended by* 216 F.3d 1201 (9th Cir. 2000). **Dissent at 10.** However, these cases hold that the preponderance of the evidence standard applies to the district court's decision whether to revoke supervised release, not to our review of whether any error committed by the district court was harmless.

4

statements that Gentry was driving at a high rate of speed and the specific observation that he might have been traveling 85 miles per hour. However, no other evidence presented by the government went to the speed Gentry was traveling at the time of the accident itself, or whether that speed was reckless, negligent, or necessary under the circumstances of Gentry's having just been stabbed.[4]  The officer's other observations related to the status of the victim and damage to the vehicles, which are sufficient to establish that Gentry was involved in the accident but not whether he "recklessly" caused it.  In an interview before the hearing, Gentry stated that he was driving "super fast" and "tore the [expletive] off" in the direction of a hospital, but this does not establish the speed or circumstances of Gentry's driving at the time of the accident.  Nor does the hearsay statement by Gentry's girlfriend that he was driving "fast" and ran a red light. Even if credited, simply because Gentry ran a red light does not mean that he did so recklessly.  Therefore, the admission of the hearsay evidence in violation of Gentry's due process rights was not harmless.

---

[4] The dissent adopts the district court's view that Gentry's potentially reckless choices at other points during the night in question are sufficient to find that Gentry committed vehicular assault. *See* **Dissent at 10–12.**  However, the Washington statute states that a person commits vehicular assault when he drives "[i]n a reckless manner *and causes* substantial bodily harm to another."  Wash. Rev. Code § 46.61.522(1)(a) (emphasis added).  The statute thus requires us to ask whether the defendant was driving recklessly when he caused substantial bodily harm.  The same reasoning applies when analyzing the "disregard for the safety of others" prong.  *See* Wash. Rev. Code § 46.61.522(1)(c).

**REVERSED.**

*United States of America v. Gentry*, 22-30002

BENNETT, Circuit Judge, dissenting:

In Washington, a person is guilty of vehicular assault if he operates or drives any vehicle "[i]n a reckless manner" *or* with "disregard for the safety of others and causes substantial bodily harm to another." Wash. Rev. Code. § 46.61.522(1). To operate a vehicle "[i]n a reckless manner" is "to operate a vehicle in a 'rash or heedless manner, indifferent to the consequences.'" *State v. Roggenkamp*, 106 P.3d 196, 204 (Wash. 2005). And to operate a vehicle with disregard for others' safety "implies an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term 'negligence." *State v. Eike*, 435 P.2d 680, 684 (Wash. 1967). Washington's pattern jury instructions adopted and adapted these definitions, respectively.[1]

---

[1] To operate a vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences.

Disregard for the safety of others means an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than ordinary negligence. Ordinary negligence is the failure to exercise ordinary care. Ordinary negligence is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances.

1

I agree with the majority that the district court erred by not conducting the balancing test under *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999). But the record contained other evidence which proved beyond any doubt that Gentry drove in a reckless manner *and* with disregard for the safety of others. Because I believe the majority materially misevaluates the evidence, including in its harmlessness analysis, and misapplies the *Comito* balancing test, I respectfully dissent.

I.

The majority takes issue with the district court's reliance on an officer's hearsay "testimony that witnesses told him that Gentry 'hit the bicyclist while running through a red light, and was going very fast, one said 85 miles per hour.'" Mem. Disp. at 3. The majority states the officer's "testimony was couched in qualifiers, stating 'I think one [witness] might have said 85 miles per hour.'" *Id.* Even were we to analyze this case through the majority's lens, when we consider all the relevant facts on the record (as we must and as the district court did), the hearsay evidence is "corroborated" and "reliable."[2] But more importantly, the non-

_____

11A Wash. Prac., Pattern Jury Instr. Crim. 90.05 (5th ed., Dec. 2021 update).

[2] In its ruling, the district court stated: "Even if the hearsay exception did not apply, it's corroborated and made reliable because of Mr. Gentry's own comments that he was going super fast trying to get to the hospital, and that his girlfriend confirmed that he went through a red light."

hearsay evidence overwhelmingly demonstrates that Gentry drove in a reckless manner and with disregard for the safety of others.

I look first to Gentry's admissions in the audio recording, which are unencumbered by any hearsay issue.[3] Gentry said that he was stabbed by an unknown assailant after a "fender bender" that escalated into a road rage incident. "The only thing [Gentry was] thinking about" was getting to Harborview Hospital, so he "tore the fuck off" in the hospital's direction. But Gentry also stated, "I don't even remember driving like *super* fast." Like the district court, I believe it per se reckless that Gentry did not either call 911 and wait for an ambulance, or ask someone to drive him to the hospital, instead of "t[earing] off" while being affected by a very serious stab wound and then running a red light at a high speed. Indeed, the district court specifically so found:

> [A] reasonable person would have called 911 or have someone else drive him to the hospital. His decisions and actions evidenced a conscious disregard for a known risk through reckless or careless driving, a known risk to the safety of others, and in this particular case resulting in the injury to the bicyclist.

---

[3] Defense counsel stipulated to the entry of the recording into evidence, as defense counsel confirmed at oral argument. Oral Arg. at 2:25–2:32. Although Gentry's counsel stated he "objected to all hearsay," *id.* at 3:20, the first time any claim was made that the recording contained inadmissible hearsay was in Gentry's reply brief on appeal. Thus, Gentry's counsel didn't object below, didn't properly raise this issue on appeal, and, in any event, the recording is admissible as a statement of a party opponent. Fed. R. Evid. 801(d)(2)(A).

In the audio recording, Gentry provided two additional relevant statements: his girlfriend, who was following him in a different car, told him that he was driving "fast" and "blew through a red light"; and his passenger told him to slow down.[4]  These statements *alone* establish that Gentry drove in a reckless manner

---

[4] The majority cites "the hearsay statement by Gentry's girlfriend."  Mem. Disp. at 5.  The district court granted Gentry "a standing objection for any testimony from [Officer Paine] about what witnesses told him."  But Gentry did not object to any part of the audio recording testimony as hearsay, and as discussed above, stipulated to the recording being admitted into evidence.  And any objection by Gentry would have failed because the entire audio recording is a statement of a party opponent made by the party, and thus by definition, not hearsay.  Fed. R. Evid. 801(d)(2)(A).  If Gentry had hypothetically made a more focused objection as to *his* reporting of the girlfriend's statement to him, such an objection would also have failed because it was admissible as an adoptive admission.  Fed. R. Evid. 801(d)(2)(B).  His girlfriend's statements were also admissible as an excited utterance and as a present sense impression.  Fed. R. Evid. 803(1), 803(2).  If his girlfriend were unavailable as a witness, the statement would also be admissible as a statement against Gentry's interest.  Fed. R. Evid. 804(b)(3).  The same is true as to Gentry's reporting of the passenger's statements to Gentry.

"Although the Federal Rules of Evidence do not strictly apply to revocation hearings, long-standing exceptions to the hearsay rule that meet the more demanding requirements for criminal prosecutions should satisfy the lesser standard of due process accorded the respondent in a revocation proceeding." *United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005) (citation omitted).  And in any case, his argument made for the first time *in his reply brief* that his report of the statements his girlfriend and passenger made to him are inadmissible is waived. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014).

and with disregard for the safety of others.  Driving fast and running a red light is per se reckless and in disregard for the safety of others, as the district court found.[5]

The officers' observations included far more than simply reporting hearsay statements about Gentry's speed.  Officer Paine spoke to the bicyclist.  Among other things, the bicyclist told him she had been hit when "riding her bike across the crosswalk with a walk signal."[6]  This, too, alone establishes that Gentry drove in a reckless manner and with disregard for the safety of others.  *See State v. Costello*, 367 P.2d 816, 818 (Wash. 1962).  Gentry ran a redlight and hit a bicyclist in a marked crosswalk.  The victim could not walk or stand because of her broken pelvis.  Officer Paine testified that when he arrived, he saw a silver Range Rover

---

[5] Among other arguments, defense counsel told the district court: "He may have been driving carelessly, he may have been driving recklessly, but this isn't a case where it amounts to violating his supervised release."

[6] On appeal, Gentry does not challenge the use of this testimony, either as hearsay, or otherwise.  In addition, none of his filings before the district court challenged the admissibility of the victim's statements; his hearsay arguments went *only* to Officer Paine's recounting the bystander witnesses' statements.  In any event, the bicyclist's statement would be admissible as a present sense impression or an excited utterance.  *See Bemis v. Edwards*, 45 F.3d 1369, 1372–73 & n.1 (9th Cir. 1995).  She had just been hit by a car and had yet to receive medical attention.  Officer Paine was the first responder on the scene, arriving at approximately 7:30.  Mr. Gentry stated in his prehearing brief that he began driving "at about 7:30 in the morning."  Thus, the record supports that Officer Paine arrived very shortly after Gentry collided with the bicyclist.  As Officer Paine "first ran up to [the bicyclist, the witnesses] were on the ground trying to comfort her" while the medics were en route.  Officer Paine was there before the paramedics arrived and loaded her into the ambulance.  Thus, the bicyclist's medical emergency was ongoing, and the collision had just recently occurred, when Officer Paine asked her questions.

5

parked "a couple of hundred feet" from the intersection and an injured biker in the middle of the road, "[a]bout 100 feet" from the vehicle. Her bike was "shattered"—"[c]ompletely destroyed"—and a group of bystanders "were on the ground trying to comfort her" and "giv[ing] her some aid." The Range Rover's emergency blinkers were on, *its windshield was shattered, and its airbags were deployed*. No one was in or near the car. Blood was smeared near the driver's side door, which was open. Bike debris trailed from the Range Rover towards the collision spot. So irrespective of any guess from bystanders as to the speed (which was hearsay in the form it came into evidence), the physical evidence alone establishes that Gentry was driving very fast—as do Gentry's, his girlfriend's, and his passenger's statements. A low-speed collision can't cause hip fractures, a shattered and completely destroyed bike, widely scattered debris, a shattered windshield, and deployed airbags. The witness's hearsay speed estimate of 85 miles per hour added essentially nothing to the recklessness calculus.

## II.

Considering the full evidentiary record, the majority misapplies the *Comito* balancing test. First, the majority finds the "hearsay testimony was critical to the district court's determination that Gentry committed vehicular assault," referencing

6

witnesses' testimony of Gentry's speed.[7]  Mem. Disp. at 3.  This is the contested

hearsay evidence:

> [The witnesses] saw the silver Range Rover driving southbound on 7th.
> It was traveling at a very high rate of speed.  I think one might have
> said 85 miles per hour.  It went through the solid red light at the
> intersection on Virginia, and that's when he collided with the victim,
> who was riding her bicycle in the crosswalk.

But as underscored in Part I, this specific testimony was not important to the

court's recklessness determination, and certainly not nearly as important as the

majority concludes.  That is so because the non-hearsay evidence on the record

essentially eliminates the importance of this hearsay testimony to the ultimate

finding.[8]  *See United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005).  Gentry

admitted that he was driving without regard for the safety of others.  Not only was

he driving very fast, but he was driving with tunnel vision: "[t]he only thing [he

---

[7] This narrow focus aligns with Gentry's argument that the hearsay testimony about his speed "led the court to conclude he drove recklessly."

[8] The majority states that none of this evidence "pertains to the relevant period in time: that of the accident itself."  Mem. Disp. at 4.  The majority seeks to isolate the exact moment of the collision from "Gentry's potentially reckless choices at other points during the night."  *Id.* at 5 n.4.  First, even were this correct (it isn't), at the exact moment of the collision, Gentry was driving fast and running a red light, i.e., driving recklessly and recklessly causing the serious injury to the bicyclist. And second, the case law does not support the majority's narrow inquiry. In assessing whether Gentry was driving in a reckless manner or with disregard for the safety of others when he hit the bicyclist, we, and the trier of fact, must consider the circumstances surrounding and leading up to the exact moment of impact, as discussed above.

7

was] thinking about [was] Harborview," the hospital he was speeding to get to. Gentry even acknowledged that if he "was functioning correctly, [he] would have . . . pulled over and let [his passenger] drive." This detailed admission shows that Gentry was driving with conscious disregard for the danger he posed to others. Focused on getting to the hospital to treat his stab wound, Gentry was not thinking about his speed, pedestrians, or traffic signals—including the red light his girlfriend told him he "blew through." Given the physical evidence at the scene, the unobjected-to statements of the victim, the officers' observations, and Gentry's admissions, the hearsay evidence regarding the precise speed is essentially irrelevant to the ultimate finding. Thus, this factor weighs against the right to confront.

Second, the majority finds "the reliability of the hearsay evidence was questionable," specifically addressing one witness's estimate that Gentry was going 85 miles per hour.[9] Mem. Disp. at 3. But reliability is part of the overarching factor of "the nature of the facts to be proven by the hearsay

_____

[9] The majority rejects the government's argument, and the district court's finding, that the present sense impression exception applies. Mem. Disp. at 3 n.2. Hearsay exceptions are viewed as an indicia of reliability. *See Valdivia v. Schwarzenegger*, 599 F.3d 984, 990 (9th Cir. 2010); *see also Hall*, 419 F.3d at 988. And here, the medical emergency was ongoing: the witnesses were caring for the victim, who was still on the ground, when the officer arrived. Thus, the witnesses' statements were "nearly contemporaneous with the incident described." *Bemis*, 45 F.3d at 1372.

8

evidence." *Comito*, 177 F.3d at 1171. This factor considers whether the hearsay was consistent and corroborated by other evidence, and thus reliable. *Hall*, 419 F.3d at 987–88. Like the majority, Gentry fixates on one witness's estimate that he was driving at 85 miles per hour. I agree that the *specific speed* of 85 miles per hour is uncorroborated. But Gentry's specific speed is immaterial here; testimony that Gentry was going very fast *is* reliable because it was corroborated multiple ways, including in an admission by Gentry and by the overwhelming physical evidence of the collision.

The majority states that "Gentry could not inquire about the reliability of the witness's statement," which I take to mean Gentry was not provided an opportunity to refute the hearsay testimony. Mem. Disp. at 3; *see United States v. Martin*, 984 F.2d 308, 311 (9th Cir. 1993). Because the government stated it could subpoena the witnesses, Gentry's counsel could have obtained their names and addresses from the government or sought a continuance to do so. Gentry cannot forgo the steps necessary to pursue the right to confrontation only to invoke that right after the fact. And Gentry presumably could have called his girlfriend or his passenger, who were witnesses, or presented evidence that the physical evidence at the scene was inconsistent with him going very fast. Of course, the latter is only a theoretical possibility because the physical evidence established beyond any doubt that he *was* going very fast.

9

Finally, the majority states that "the government failed to demonstrate good cause for depriving Gentry of his right to confrontation" because there were alternatives that "could have been used to preserve Gentry's right to confrontation" during the COVID-19 pandemic. Mem. Disp. at 3–4. To analyze the government's good cause, the Ninth Circuit considers "the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence." *Martin*, 984 F.2d at 312 (cleaned up). But when the government provides "absolutely *no* substitute for live testimony," the "expense or difficulty of procuring witnesses carries no weight in [the court's] consideration of good cause." *Id.* at 313. Thus, we should reject the government's attempt to rely on the difficulty of procuring witnesses and instead determine the government's good cause based on the traditional indicia of reliability. As discussed above, this factor supports admitting the hearsay evidence in this case.

For these reasons, under the *Comito* balancing test, the officer's hearsay testimony was admissible, and no due process violation occurred.

## III.

But even if the majority is right on this issue and I am wrong, we must still affirm if any error was harmless. *See United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008). First, the majority applies the wrong standard by concluding that the "district court's error in failing to exclude the hearsay statements was not

harmless beyond a reasonable doubt." Mem. Disp. at 4. The standard is preponderance of the evidence. *See Perez*, 526 F.3d at 547; *United States v. Daniel*, 209 F.3d 1091, 1094 (9th Cir.), *amended by* 216 F.3d 1201 (9th Cir. 2000).

But under either standard, any error in admitting the hearsay evidence was harmless. The majority states that "no other evidence presented by the government went to the speed Gentry was traveling at the time of the accident itself, or whether that speed was reckless, negligent, or necessary under the circumstances of Gentry's having just been stabbed." Mem. Disp. at 4. Fixated on Gentry's actual speed, the majority finds that Gentry's own statements "that he was driving 'super fast'" and his reference to his girlfriend's statement "that he was driving 'fast' and ran a red light" does not suffice to show that he "did so recklessly."[10] Mem. Disp. at 5. I find this conclusion inexplicable.

First, the majority does not apply the proper legal standard for driving "[i]n a reckless manner"—nor does it even cite that standard. The majority discusses whether Gentry's "speed was reckless," Mem. Disp. at 4, "whether [Gentry] 'recklessly' caused [the accident]," *id.*, and whether Gentry "ran a red light . . . recklessly," *id.* at 5. The majority errs by discussing whether Gentry's speed,

---

[10] The majority ignores the "disregard for the safety of others" prong.

11

collision, *or* running a red light were reckless acts taken individually.[11]  Rather, Washington's standard requires courts to consider all of Gentry's behaviors as evidence in assessing whether Gentry drove in a reckless manner.  *See Costello*, 367 P.2d at 818.  Even assuming all of the hearsay testimony about his speed were inadmissible, any rational trier of fact would have had to conclude that Gentry drove in a rash, heedless manner, and with disregard for the safety of others.  For his own reasons (whatever they might have been), he did not call the police or an ambulance after being stabbed in the "road rage" incident.  He did not ask someone else to drive him.  He focused only on driving himself to the hospital as quickly as possible, leading him to run a red light and collide with a cyclist in a crosswalk.  The physical evidence, described in Part I, establishes beyond any reasonable doubt that he was driving fast.  After the collision, he looked back at the collision, then walked away from the victim, "indifferent to the consequences." *Roggenkamp*, 106 P.3d at 204.

The record apart from the challenged hearsay testimony regarding Gentry's speed contains ample evidence of all elements of vehicular assault.  Thus, Gentry

---

[11] I don't understand how in the circumstances here, Gentry's running the red light could be anything but reckless.  But we don't look at Gentry's individual act in isolation in determining whether he acted recklessly or in disregard for the safety of others.  We look at everything he did.

has failed to show that any supposed due process violation prejudiced him. *See United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997).